NEW JERSEY WATER SERVICE COMPANY AND THE NEW YORK TRUST COMPANY, PROSECUTORS, v. BOROUGH OF BUTLER, DEFENDANT.

Argued October 2, 1928—Decided November 22, 1928.

Before Justices MINTURN, BLACK and CAMPBELL.

For the prosecutors, *Treacy & Treacy* and *Wherry & Wright* (of the New York bar).

For the defendant, *Elmer King* and *Jacob W. De Yoe.*

The opinion of the court was delivered by

MINTURN, J.   The writ in this case brings up for review an order made on June 4th, 1926, by a justice of the Supreme Court on petition of the borough of Butler, appointing commissioners to condemn part of the property and part of the franchises of the New Jersey Water Service Company under the provisions of the authority conferred by chapter 152 (*Pamph. L.* 1917, *p.* 429, *art.* 32), and its amendments and supplements.   The application for the appointment of the condemnation commissioners was made under the provisions of the act of 1900, entitled "An act to regulate the ascertainment and payment of compensation for property condemned or taken for public use."   *Comp. Stat., p.* 2182.

The reasons urged in support of the writ are, first, that the borough of Butler has no power under the act of 1917 to undertake the condemnation proceedings in question, for the reason that that act does not apply where several municipalities are served by the same water works system; and also because the borough of Butler has no power under the act of 1917 to condemn water works for the purpose of supplying other municipalities, and also because the borough of Butler has no power to condemn more property than is necessary for the purpose of supplying water to the inhabitants of the

borough; secondly, because the proceedings taken by the borough of Butler are deficient in that they do not authorize it to condemn the property described in the petition, for the reason that the borough has not by resolution or ordinance authorized the taking of the property described in the petition, and also because the ordinance and resolutions passed by the borough do not authorize the condemnation of all the property which the borough is required by the act of 1917 to condemn, and also because the borough of Butler never offered to purchase all the property which it now seeks to condemn, . and also because no *bona fide* or reasonable offer was made by the borough of Butler to the New Jersey Water Service Company in compensation for the property designed to be taken. Third, because if the act of 1917 be so construed as to authorize the borough of Butler to condemn part of the company's property without acquiring all of its franchises, the act would be unconstitutional; and, finally, because the Eminent Domain act of 1900, under which these proceedings in condemnation have been brought, is unconstitutional and void.

A recitation of the facts in the case will be necessary to realize the legal situation. The New Jersey Water Service Company, a New Jersey corporation, was formed by the consolidation and merger of the Little Falls Water Company and the Mountain Water Service Company, formerly known as the Butler Water Company. The latter company and the Little Falls Water Company were organized under the Water Supply act of New Jersey, passed April 1st, 1886, and its amendments. By virtue of the merger of these companies the New Jersey Water Service Company succeeded to and acquired all of the property rights and franchises of the Mountain Water Company and the Little Falls Water Company, and assumed the obligation to supply water to the boroughs of Butler, Bloomingdale, Pompton Lakes, Riverdale, Wanaque, the township of West Millville and the city of Little Falls.

The New Jersey Water Service Company owns two sources of water supply, one at Apshawa and the other at Kikeout, and has acquired rights under the orders of the board of conservation and development of the state to divert water

from both those watersheds and supply water to the boroughs of Pompton Lakes, Riverdale, Butler, Blomingdale and Wanaque. The company owns the distribution system in Butler, the distribution system in Bloomingdale, and the transmission mains connecting Butler and Bloomingdale with the Apshawa reservoir and the Kikeout reservoir. The company owns franchises for the supply of water for public and private uses to Butler and Bloomingdale. It also owns a contract to supply water to the borough of Pompton Lakes, and through that borough to the inhabitants of Riverdale, as well as the distribution system in the borough of Litle Falls, and a franchise to supply water for the public uses of that borough.

The Kikeout and Apshawa reservoirs are about a mile apart, and from the former reservoir runs a ten-inch main into the borough of Butler, an eight-inch main through the main street of Butler to Bloomingdale, and a twelve-inch main from the Apshawa reservoir to the borough of Bloomingdale, and from Bloomingdale to the Pequannock river, where a branch main takes the water across the river to the borough of Butler. Another branch main takes the water to Bloomingdale, and through Bloomingdale to Pompton Lakes.

The company owns separate distribution systems in the borough of Butler and in the borough of Bloomingdale. The distribution system in the latter borough is used only for the supply of water for both public and private uses to the inhabitants of that borough.

The transmission system of the company and its sources of supply are used for the supply of water to the boroughs of Butler, Bloomingdale, Pompton Lakes, Riverdale and Wanaque, and for the public and private uses of the inhabitants thereof, and for the private uses of the inhabitants of the township of West Millville.

The prosecutor in this case also supplies as part of its distribution system the borough of Little Falls, which is about ten miles distant from Butler, and has no connection with the sources of supply or the distribution system used to supply the borough of Butler, which are therefore not involved in this controversy.

The property and works of the company serving Butler, Bloomingdale and other municipalities, except Little Falls, is valued by the board of public utility commissioners for rate making purposes at $516,000, including $45,000 to be expended on the plant by an order of that board made in September, 1927. At that hearing the borough of Butler was represented by its counsel and was heard.

The property of the New Jersey Water Service Company is covered by a mortgage to the New York Trust Company, the other prosecutor herein, executed on May 1st, 1926, under which there is now issued and outstanding $550,000 of bonds maturing in 1951. The issuing of the mortgage and the bonds was approved by the board of public utility commissioners on the 14th of June, 1926.

In this situation, on November 30th, 1927, the borough of Butler, through its attorney, made a verbal offer of $260,000 to the vice-president of the New Jersey Water Service Company for the Butler plant of the company. The offer apparently was made for the purpose of inducing the company to make a counter offer—which the company failed to do—so as to bring about the statutory requirement of a *bona fide* effort to purchase the property at private sale prior to condemnation proceedings. The offer of $260,000 was refused by the company, but no counter offer was ever made.

Thereafter the borough of Butler sent a copy of a resolution to the water company wherein the borough council of that municipality ratified the verbal offer made by its attorney. This offer was duly declined by the company. No effort was made by the borough of Butler to purchase the franchises of the New Jersey Water Service Company to supply water to the boroughs of Butler, Bloomingdale, Pompton Lakes and Riverdale, nor did the borough of Butler offer to purchase the company's accounts receivable, which amounted to $7,917.19 on the 12th of March, 1928, and to $18,857.59 on the 11th of July, 1928.

It is now argued that a consideration of these facts militates against the right of the borough of Butler to condemn the lands under consideration.

It appears in the record that the Kikeout and Apshawa reservoirs are both necessary for the proper supply of water to. the borough of Butler, which receives the water through pipes and mains laid in the borough of Bloomingdale. It also appears that the properties sought to be condemned in this proceeding, including the two reservoirs and distribution systems in the boroughs of Butler and Bloomingdale, are so connected, interwoven and interlocked that they cannot be operated separately and independently to furnish an adequate supply of water for the public and private use of the borough of Butler and its inhabitants, but must be conducted for that purpose as an entire water supply system.

An examination of the statute law upon the subject, which comprises chapter 152 of the laws of 1917, provides:

"Any municipality may purchase or lease from any person or persons, corporation or corporations, owning water works supplying such municipality with water, or adapted to furnish such supply, all or any part of the real estate, personal property and works, and all or any part of the corporate rights, powers, franchises and privileges of said person or persons, corporation or corporations, for such sum as may be mutually agreed upon. In case of any disagreement between the said municipality and the said person or persons, corporation or corporations, as to the amount of compensation to be paid, said municipality may condemn said real estate, personal property and works, and all corporate rights, powers, franchises and privileges of said person or persons, corporation or corporations."

Subdivision D of the same act provides that—

"Any municipality may purchase, condemn or otherwise acquire the necessary lands, and rights or interests in lands, and water rights and rights of flowage or diversion, within or without such municipality for the purpose of a water supply. Damages for the taking of such property, as well as the value of such property taken, shall be ascertained and paid for according to law."

Under the provisions of the same act, section 15 provides:

"It shall be lawful for the governing body of any municipality owning or controlling water works to enter into and

make a contract or contracts with any municipality or munici-
palities in this state to furnish a supply of water for such
other municipalities and their inhabitants, for public and
private uses, for the term of a year or years."

The same act provides, subdivision B, section 1, that—

"Any municipality may enter into a contract or contracts
from time to time for a period not exceeding fifteen years
with any other municipality in this state having water works,
to obtain supply of water for public and private uses of such
first-mentioned municipality and its inhabitants."

The case of *Plainfield Water Co.* v. *Plainfield*, 83 *N. J. L.*
332, cited by the prosecutor in support of his contention, in-
volves entirely a different question. In that case the act
contained in 1 *Comp. Stat., p.* 823, was under consideration,
and that act provides for the acquiring of the property of a
water company which was the owner of water works within
the city, and in that respect entirely differs from the case
under consideration.

The prosecutor also contends that under the acts of the
legislature already referred to no power is given to condemn
parts of the mains and distributing system in the borough of
Bloomingdale. Part of the main of the prosecutor runs
through the borough of Bloomingdale in order to reach But-
ler. The distributing system in Butler is also connected with
the distributing system in Bloomingdale, and in that manner
furnishes water to Butler through such distributing system.
Under the circumstances it would be a very difficult matter
to condemn a portion of the distributing system of the prose-
cutor and omit the condemnation of a property in Blooming-
dale. It would also subject the application to the condemna-
tion mentioned in the case of Plainfield Water Company
against Plainfield, above cited, where it is said that "the
legislature cannot be supposed to have contemplated a dis-
memberment of the water company's plant in such a way
that a part of it would be rendered useless to the condemning
municipality owning it, since it could not acquire that part,
and useless to the company because it would be cut off from
the source of supply."

We see no force, therefore, in that contention.

In like manner other legislation cited by the prosecutor, such as chapter 195 of the laws of 1922, provides for other conditions not presented by the application in this case, since this application is by one municipality alone, while the act referred to relates to two or more municipalities.

It is contended also that the borough is attempting to acquire all of the property of the company used in supplying it with water for public and private use. It will be observed from a perusal of the ordinance that it provides that the borough of Butler shall acquire, by purchase or condemnation, all of the water works system and plant formerly owned by the Butler Water Company, afterwards by the Mountain Service Company, now known as the New Jersey Water Service Company, which includes the Kikeout reservoir and intake, and the Apshawa reservoir and intake, and all the lands of the company in and about said reservoirs and intakes, and the pipe lines connected with said reservoirs, and any flowage rights, easements, and the distribution system in the boroughs of Butler and Bloomingdale, and the interest of such company in any lands appurtenant to said water works system and plant, for the purpose of supplying water for public and private use in the borough of Butler; and the petition presented to the court for that purpose asks for the appointment of three commissioners to appraise the real estate, personal property and works and the corporate rights, powers, franchises and privileges of New Jersey Water Service Company, in accordance with the provisions of the ordinance.

It is now contended that the borough of Butler failed to make an offer to purchase all the property which it thus seeks to condemn in accordance with the provisions of the ordinance, and does not include the corporate rights, powers, franchises and privileges mentioned in the petition. We fail to observe the force of this contention, for if the borough condemns the water works system and plant with the new reservoirs and the distributing systems in Butler and Bloomingdale, it will have taken absolutely all the property of the company comprising that unit excepting the property at Litlte Falls,

which has no immediate connection with the plant and system sought to be condemned. It will be observed in this connection that under the act of 1917, page 430, section C, the property subject to condemnation is described as "all or any part of the real estate, personal property or works, and all or any part of the corporate rights, powers, franchises and privileges" of the operating company.

It will also be observed that under the laws of 1923, page 492, it is provided: "In case any municipality which did not provide and supply its inhabitants with water by or from water works owned and operated by it at the time of the approval of this act, shall desire to acquire by purchase, lease or condemnation any existing water works system or plant or any part thereof, or to procure a supply of water for the purpose of supplying water for the public and private use of such municipality," necessary steps for condemnation may be taken. We think that this amendment to the act furnishes the necessary power sought for the purposes of the condemnation of the property in question as "an existing water works system or plant," and that when the condemnation shall have taken place all the corporate rights, powers, franchises and privileges of the corporation are included in the condemnation, for it is not at all conceivable that the company has an inalienable right, so far as the state is concerned, to continue doing business, and is beyond the reach of legislative power for the purpose of vesting, by purchase or condemnation, its rights, privileges and interest in a municipality.

Nor are we impressed with the contention that no *bona fide* offer for the purchase of the property was made by the municipality prior to the institution of the condemnation proceedings. Manifestly no condemnation can be instituted until a *bona fide* offer shall have been made to the owner of the property sought to be condemned. This offer, in our judgment, was made on the 30th of November, 1927, in a verbal manner on behalf of the borough of Butler. At the time this was refused. This offer was subsequently incorporated in a resolution passed by the borough and sent to the prosecutor, which offer was refused in a letter dated December

12th, 1927. The resolution of the borough was plain and unambiguous, as follows: "That the borough made an offer to the prosecutor of $260,000 for all the water works system and plant of the New Jersey Water Service Company, used for the purpose of supplying water for public and private use in the borough of Butler." The prosecutor refused to discuss the details of the price, although requested so to do by the borough agent, and then the condemnation proceedings were instituted. The testimony of Mr. De Yoe, the attorney for the borough of Butler, on this subject is sufficiently clear to set this point at rest.

It is also worthy of note that the other boroughs affected by the acquisition of this plant by the borough of Butler, namely, the borough of Bloomingdale, the borough of Pompton Lakes, the borough of Riverdale and the borough of Wanaque, have consented and agreed that the borough of Butler may take over and operate the plant in the manner proposed by this proceeding. Nor is there any force in the contention that the act of 1900 is unconstitutional. That question was passed upon by this court in *In re Passaic Valley Water Commission,* 6 *N. J. Mis. R.* 747, 749, in which the arguments advanced by the prosecutor here as to the act in question were fully considered and adjudicated, and it was there held that "if in the application of the statute it may seemingly work an injustice we cannot refuse to apply or enforce a constitutional statute for that reason." In the same opinion, in which the objection to taking the company's property free and clear of mortgage liens was considered, this court observed: "An examination of that act [1900] reveals a clear purpose to have the commissioners, and the jury on an appeal, make a just and equitable appraisement of the value of the property and damages only. They have no concern with nor function to perform in connection with any liens, judgments or mortgages."

The taking over of this plant by the borough of Butler manifestly includes the corporate rights, powers, franchises and privileges acquired and owned by the prosecutor in supplying water to Butler, which acquisitions must be paid for

by the board of commissioners as damages suffered by the prosecutor. *In re Passaic Valley Water Commission, ubi supra.*

In so far as the prosecutor insists on presenting and representing the legal status of the other municipalities concerned in this condemnation, we think it has no legal standing for that purpose. It must stand entirely upon its own interest and not upon the interest of others whom it cannot be said it represents. All the municipalities interested in this proceeding were made parties to the proceedings, and were served with notice and have made no appearance and entered no objection to the effort of the borough of Butler to condemn, and the attempt of the prosecutor to represent them and to present objections to these proceedings, entirely based upon supposed inconveniences resulting to other municipalities by reason of the proceedings here taken, is without any legal support, but on the contrary is opposed to the trend of judicial decisions. *West Jersey Traction Co.* v. *Camden,* 58 *N. J. L.* 362; *Jersey Central Power and Light Co.* v. *Spring Lake,* 140 *Atl. Rep.* 677; *Critchfield* v. *Jersey City,* 132 *Id.* 321, in which latter case the court observed: "It was held that where the prosecutor failed to show its own interest in the controversy it had no standing in court to question the right of its adversary."

The result of our consideration of the case, therefore, is that the writ of *certiorari* bringing up for review the order made on June 4th, 1928, on the petition of the borough of Butler, appointing commissioners to condemn part of the property and part of the franchises of the New Jersey Water Service Company, should be dismissed and the proceedings below affirmed.